FILED & JUDGMENT ENTERED
Steven T. Salata

Jun 10 2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 13-32406 |
| **Melissa Danette Spiers** ) | Chapter 7 |
| Debtor. ) | |

## ORDER REGARDING COMPETING NOTICES OF TRANSFER OF CLAIM

When it became apparent that Melissa Spiers' bankruptcy estate would make a distribution to creditors Lawrence G. and Lulie L. Berg (the Bergs), two creditors of the Bergs filed competing notices of transfer of claim seeking to collect any funds owed to the Bergs. The Bergs, however, were heavily entwined in litigation and judgment execution proceedings in North and South Carolina state court that resulted in orders restraining the Burgs' right to alienate their claim against the bankruptcy estate. This dispute relates to which of the two competing claim transferees is entitled to a distribution on the same claim against debtor's bankruptcy estate in light of those state court orders.

1

Spiers, her former husband,[1] and the Bergs were members of M J Larian, LLC. In August 2001 and July 2002 the Bergs agreed to loan M J Larian a total of $2,250,000 (Claim 3-1). Spiers and her then husband personally guaranteed the debt owed to the Bergs, giving rise to the Bergs' claim against Spiers' bankruptcy estate.

M J Larian then borrowed $350,000 from Bank of the Ozarks in May 2010. Spiers and the Bergs guaranteed the debt owed to Bank of the Ozarks (Ex. 1). When M J Larian failed to make required payments on the bank debt, Bank of the Ozarks filed a complaint in North Carolina Superior Court (the NC Action) against M J Larian, the Bergs, and Spiers, asserting all were jointly and severally liable for the over $300,000 outstanding on the note (Ex. 1). The Bergs failed to appear and defend the NC Action, and Bank of the Ozarks successfully obtained default judgment against them (Ex. 3). Bank of the Ozarks then transferred the judgment to Lexington County, South Carolina, where the Bergs resided.

When the Lexington County Sheriff attempted to execute on the judgment, it initially appeared that the Bergs had no unencumbered property to seize, and the Sheriff returned the execution as *nulla bona* (Ex. 12). As a result, on March 14, 2014, the South Carolina court ordered the Bergs to appear and turn over numerous financial records, tax returns, titles, and other proof of property ownership and indebtedness. Additionally, the South Carolina Court ordered that under "Section 15-39-440 of the Code of Laws of South Carolina" the Bergs were "temporarily retrained and enjoined from alienating, selling, transferring, or otherwise disposing of [their] property, not exempt from

---

[1] Spiers' ex-husband, Brian Joseph Spiers, also filed bankruptcy (Case No. 11-32345). The Court denied Brian Spiers' discharge under 11 U.S.C. § 727 for "rampant" bad faith and concealment of assets (Case No. 12-3211, Doc. 22).

execution, until further order from [that] Court" (Ex. 13).[2] Similar orders were entered on June 18, July 14, September 4, November 11, 2014 (Ex. 16-21). The Bergs never appeared or turned over the required documents.

Spiers filed bankruptcy on November 11, 2013. The Bergs filed a proof of claim against Spiers' bankruptcy estate based upon her guarantee of the debt owed by M J Larian to the Bergs. The trustee initially objected to the Bergs' claim for lack of supporting documentation (Doc. 39). After the Bergs filed copies of the agreements between themselves and Spiers (Doc. 40), the trustee withdrew his objection to the Bergs' claim (Doc. 43). While the Bergs' claim is large and somewhat suspicious,[3] it has been allowed in this case and is not in dispute.

When it realized that the Bergs would receive a distribution on their claim, Bank of the Ozarks successfully obtained an *ex parte* order in aid of execution on the default judgment in the NC Action from the North Carolina Superior Court dated February 18, 2015 (Ex. 25 & 26).[4] That order provided that "[t]he Bergs are hereby forbidden from transferring or otherwise disposing or conveying [their claim in the Spiers bankruptcy] other than a transfer to [Bank of the Ozarks] . . . ." The order further stated that Bank of the Ozarks "is entitled to transfer the Bergs' claim to [itself] in the Spiers Bankruptcy towards partial satisfaction of the Default Judgment."

---

[2] Section 15-39-440 of the Code of Laws of South Carolina provides that "[t]he judge may also, by order, forbid a transfer or other disposition of the property of the judgment debtor not exempt from execution and any interference therewith."

[3] The Bergs' claim is brought by co-member-managers of a company for a loan made by them to the company and guaranteed by the other member-managers.

[4] Apparently, no prior notice and hearing was required.

3

That same day, Bank of the Ozarks filed a notice of transfer of claim in this bankruptcy case, naming itself as transferee and the Bergs as transferors and attaching a copy of the *ex parte* order in aid of execution (Doc. 56).

A few hours later, the Gary Swiden IRA (Swiden), another creditor of the Bergs, filed a notice of transfer of the same claim in this bankruptcy court, naming itself as transferee and the Bergs as transferors (Doc. 58). That notice was not signed as required (Doc. 59). An amended, signed notice was filed on February 20, 2015 (Doc. 61). In light of the competing notices, the Court set a hearing to determine the validity and *bona fides* of both purported assignments.

Acting *pro se*, the Bergs then objected to the transfer to Bank of the Ozarks, arguing lack of service on the underlying judgment and on the North Carolina and South Carolina orders in aid of execution (Doc. 66). Additionally, the Bergs asserted that they transferred their claim to Swiden on November 12, 2014, three months prior to the North Carolina Superior Court order proscribing them from transferring the claim other than to Bank of the Ozarks (Doc. 66).

For its part, Bank of the Ozarks objected to the transfer to Swiden, asserting that the state court orders, which were never appealed, are now final and controlling (Doc. 67). A hearing on the competing assignments was held on April 9, 2015 after which Bank of the Ozarks and Swiden were asked to submit supplemental briefing on the residual effect of the state court orders.

This dispute between two competing assignees appears to be a case of first impression not just in this district but also in any bankruptcy court. Additionally, although this fight is between nondebtors and is based on state law and state court orders,

4

under the unique facts presented, the determination of the rightful holder of this claim would appear to be a core proceeding under 28 U.S.C. § 157(b)(2) as a "matter[ ] concerning the administration of the estate," a request for "allowance or disallowance of claims against the estate," and a "proceeding[ ] affecting the liquidation of the assets of the estate."

Bankruptcy Rule 3001 subsection (e) addresses the procedural requirements for transferring and objecting to transfers of claims in a bankruptcy case. Subsection (e)(2) provides:

> If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security **after** the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

The rule itself speaks only to objections by the transferor and makes no mention of whether a competing assignee may lodge an objection. Consequently, under a literal reading of the rule, Bank of the Ozarks would appear to lack standing to object to the transfer to Swiden. *In re Lynn*, 285 B.R. 858, 862 (Bankr. S.D.N.Y. 2002) ("Given Bankruptcy Rule 3001(e)(2)'s plain language, as confirmed by the Advisory Committee Note, third parties, including the Debtor, do not have standing to object to a claim assignment itself.").

5

However, despite the restrictions embodied in Rule 3001, bankruptcy courts are not limited to reviewing the alleged transfer in isolation of the rest of the record. *See* 9 COLLIER ON BANKRUPTCY ¶ 3001.08[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("While the 1991 Advisory Committee Note states that 'the court's role is to determine whether a transfer has been made that is enforceable under nonbankruptcy law,' it is reasonable that the court might review the facts surrounding the transfer rather than limiting itself to a simple, mechanical review of the underlying documents."). Thus, Bank of the Ozarks' standing is not determinative in this case.

Indeed, both assignments are implicated by the Bergs' objection. Because both transfers cannot be valid, by raising a timely objection to the transfer to Bank of the Ozarks, the Bergs—the purported transferors—called into question the legitimacy of the transfer to Swiden as well. Put differently, to determine whether the putative transfer to Bank of the Ozarks is enforceable, it is necessary to also determine whether the earlier putative transfer of the same claim to Swiden occurred and is enforceable; the validity of the former is dependent on the validity of the latter.

If the alleged transfer to Swiden on November 12, 2014 is valid, it would be first in time and negate any need to further examine the transfer to Bank of the Ozarks. Yet, on November 12, 2014, the Bergs were enjoined and restrained from alienating their property by the orders entered in South Carolina on March 14, June 18, July 14, September 4, and November 11, 2014 (Ex. 13, 16-21).

Nonetheless, the Bergs assert that they were not properly served in that matter and thus the orders have no effect on the enforceability of the transfer. That argument would be better addressed to the South Carolina court. Absent a clear lack of jurisdiction or

6

violation of federal law, this Court is not at liberty to opine on the validity of a state court order, especially one that was not appealed or otherwise challenged in the appropriate state forum. *In re Walker*, 416 B.R. 449, 461 (Bankr. W.D.N.C. 2009) ("Under the *Rooker–Feldman* doctrine, state-court losers are not permitted to bring follow-up actions in federal court for the purpose of complaining of errors and injuries caused by state court judgments and inviting federal court review of those judgments." (citations omitted)). Moreover, this record is insufficient to conclude that the Bergs were not properly served or afforded due process in these actions. Because the Bergs were prohibited by state court order entered pursuant to section 15-39-440 of the Code of Laws of South Carolina, this Court concludes that the Bergs' attempt to transfer their claim to Swiden was invalid and legally unenforceable.

With the transfer to Swiden unenforceable, the inquiry shifts to the transfer to Bank of the Ozarks. Between the Bergs and Bank of the Ozarks, the February 18, 2015 order in aid of execution entered in North Carolina Superior Court—the court that initially entered the default judgment—leaves little doubt as to who is entitled to a distribution on the Bergs' claim. Per the terms of that order, the North Carolina Superior Court prohibited the Bergs from transferring their claim to any party other than to Bank of the Ozarks and explicitly authorized Bank of the Ozarks to transfer the claim in this bankruptcy to itself, exactly as it has done.

Just as with the South Carolina court orders, the Bergs assert that they were not properly served and the North Carolina order is invalid. Conversely, Bank of the Ozarks claims that the Bergs were served, and even if they were not served, North Carolina Rules of Civil Procedure 5 and N.C.G.S. §§ 1-358, 1-362, and 1A-1 permitted Bank of

7

the Ozarks to obtain the order without notice to the Bergs. Again, the Bergs' attempt to collaterally attack a state court order in federal court is unavailing, and this Court declines to disturb that order.

Accordingly, Bank of the Ozarks is entitled to payment on the claim at issue here. Once the Trustee disburses the funds in this matter, he may then complete the administration of the estate and close the case.

**SO ORDERED.**

| | |
|---|---|
| **This Order has been signed electronically.** <br> **The judge's signature and the court's seal** <br> **appear at the top of the Order.** | **United States Bankruptcy Court** |